Good morning, and welcome to the last day of our session of oral arguments here in Atlanta. Just a couple of things before we begin. We will take a break to reconstitute the panel after the third case today, so we'll be taking a 10-minute break. We have a lighting system that I know many of you are familiar with, like a traffic light system, red, green, and yellow. When the yellow light comes on, that's an indicator that you have two minutes remaining in that portion of your argument, and when the red light comes on, we ask that you conclude your sentence, conclude your thought, unless you're answering a question from the court, and of course, you may answer the question. I'd also let you know that we are familiar with your cases. We've read the briefs and the relevant parts of the record, and so we encourage you to go directly to the heart of your argument. Our first case this morning is number 21-11070, Brink v. Direct General Insurance Company. Mr. Steinberg. May it please the Court. My name is Brent Steinberg, and I represent the appellant, Dustin Brink. Your Honors, my client lost an $18 million insurance bad faith case because of improper jury instructions. There are two independent bases for reversal. The first is a trial court's refusal to instruct the jury on the Boston Old Colony duties. The second is the trial court's answer to a jury question during deliberations, which was misleading and contradicted the only substantive instruction that was given. And if you agree with me on either of those two arguments, then a new trial is required. So first, let me address the trial court's refusal to instruct the jury on the Boston Old Colony v. Gutierrez duties that were established in 1980 by the Florida Supreme Court. It's been reaffirmed multiple times since then, most recently in the Supreme Court case from 2018, Harvey v. Geico. And you may recall that the trial court denied Direct General's motion for final summary judgment in this case. And in that summary judgment order, when it recited the applicable law, it recited most of our requested jury instruction verbatim. In applying that law, it held that a reasonable jury could find that Direct General acted in bad faith in two ways. The first was the failure to properly respond, and in fact, they didn't respond at all, to a settlement offer from February 19, 2010. The second was Direct General's breach of the Boston Old Colony communication duties. Specifically, that Direct General failed to properly advise its insureds about the possibility of an excess judgment, any steps that they could take to avoid that judgment, and that Direct General failed to inform the insureds about the claimant's settlement offer. And as a result of that, Direct General failed to properly communicate to the insureds about the claimant's request for additional insurance coverage, whether or not there was any additional coverage, which the claimant said he needed to find out before he could settle the case. Now the reason that the trial court denied summary judgment was because of the Boston Old Colony duties. But then when we get to trial, the court refused to tell the jury that those duties existed. They weren't told that Direct General could be held liable for breaching the Boston Old Colony communication duties. The jury wasn't told what it means for the insurer to act with due regard for the insured's duty to use the same degree of care and diligence as an ordinary person, or the same degree of care and diligence as a person of ordinary care and prudence would exercise in the management of their own business, or that Direct General was required to investigate the facts, give fair consideration to the settlement offer that was not unreasonable under those facts, and most importantly, settle, if possible, where a reasonably prudent person faced with the prospect of paying the total recovery would do so. All that is black-letter law going back to 1980, and at the summary judgment stage, the trial court applied that law to find that a reasonable jury could find against Direct General. Counsel, what bothers me about your case is that the first sentence of the fourth paragraph is clearly misleading. You recall it says the focus in this bad faith case is not on the actions of Dustin Brank or his attorneys, but rather on the actions of Direct General and its obligation to act in good faith toward the insureds. And of course, our recent case, I think it's Pelez, I don't know my pronunciations, P-A-L-A-E-Z, holds that while that is the focus, it's also relevant what the actions of the plaintiff's counsel. So, it seems clear to me that that is misleading. It's not the full law of this circuit. The law in almost every jurisdiction that I know anything about is that when there's a request to charge like this, one long full paragraph request, and part of it is wrong or misleading, then the judge has no duty to parse the rest of the charge and charge those parts that are okay. How do you respond to that? Well, first, as to the statement that Your Honor is concerned about, that is verbatim, almost verbatim, out of the Burgess case. And as the court said, and as you recognize in Pelez. You realize the law of this circuit, though, is a little bit different. Well, it's a diversity case, so the law of this circuit should be the law of the Florida Supreme Court. Well, not as to what makes. I think it's a Federal question as to whether the, for instance, under the prejudice prong of the LaMonica case, whether or not the failure to give all of the charge caused prejudicial harm. That's clearly a Federal question, is it not? For the standard of review, yes, it is, Your Honor. But to your original question about, you know, to be clear, we are saying that the trial court committed reversible error by failing to give the Bostonal Colony. And we are not, although it was an appropriate statement of law, we acknowledge that the trial court had the discretion, we made this very clear in our briefs, the trial court had the discretion to refuse to give the first two sentences of what was under Special Jury Instruction No. 2 heading and also the last paragraph. And what we're complaining about is the middle three sentences, what I'm talking about is the Bostonal Colony case. But you never told the judge, Judge, you can not give the last paragraph if you want to, but I want you to give the first three paragraphs or the second and third paragraph. You never told him that in any clear way. In the charge conference, those exact words were not uttered, no, Your Honor. But it was made clear at the beginning of the charge conference that although Direct General was asserting a general objection to any Special Jury Instructions, it was not objecting to the Bostonal Colony Instruction. There was no specific objection to that. I saw that. That didn't tell the judge, I want you to charge, I withdraw my request in toto. I want you to charge these three sentences that you now complain about. You never told him that. That's true, Your Honor, and part of the reason that soliloquy was cut short was because of the trial judge said quite definitively we are only going to use 404.4. I recognize that in the past I've given the Bostonal Colony Instruction in the Gonzales case where I was actually trial counsel and he gave that instruction, and he made clear that he refused to do so in this case, and he even said that, you know, I don't think you need to say anything else for purposes of preservation, and the defense hasn't raised a preservation issue. So from our view, the only question for the court should really be whether or not the Bostonal Colony Instructions. One thing I want to point out before I move on to the second argument is that the comment to 404.4, the standard jury instruction, says specifically that it is not intended to exhaust the subject, and it even cites Bostonal Colony as the example for when there's a communication failure alleged that there should be a separate instruction, and that was given in the Burgess case and the Florida Supreme Court endorsed that. Now as to the prejudicial harm argument, it was critical that the jury be informed of what the applicable law was, and that 404.4 was wholly insufficient in this case. I mean, the prejudice should be inherent any time the jury is not being instructed on the applicable law, but it was made worse by defense counsel's closing argument where they argued that direct general couldn't be, didn't act in bad faith because they assigned defense counsel and attempted to settle the case early on, and that was, then there was a suggestion throughout closing that direct general could only be liable if they intentionally and wrongfully refused to settle, and that mistakes and miscues would never be enough to support a finding of bad faith. And they made the same argument in their answer brief, too, where they were citing Justice Quintero's dissent from the Burgess opinion, attempting to pass it off as if it was in the majority opinion. This is why we need the trial court to instruct the jury on the applicable law and not leave it to counsel. So what argument did you make to the jury on the obligation of the insurer to advise the insured of settlement opportunities, to advise us of the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid the same? Well, we were hamstrung in what we could argue to the jury because the jury wasn't being instructed on the law on that. However, there was plenty of evidence in the record to show not only that direct general failed to properly communicate with the insured in breaching those obligations, but that that was the cause of the failure to settle. Just to read from the trial court's summary judgment order, which was on the exact same evidence as what was presented at trial, regardless of direct general's settlement attempts early on, a jury could find that direct general acted in bad faith when it failed to provide Clem with the additional insurance disclosure, failed to timely respond to Clem's time limit demand, and failed to adequately advise its insureds of the demand and the risk of an excess judgment. Where did you say that is in the record? That's in the summary judgment order. It is the second to last paragraph of it. I don't have the page number in front of me, Your Honor. So that's our first argument. Now, as to the second argument, the second issue is that the answer during deliberations was problematic for two reasons. First is that the answer misapplied the totality of the circumstances standard and suggested that the jury was to decide whether direct general acted in bad faith before any bad faith failure to settle was alleged. That's not the law. The second problem was that the answer contradicted the only instruction that was given for a 4.4. So that's the 30,000-foot view. Let me take you down to the 3,000-foot view. So the specific question was, is bad faith based on the full length of time from the accident or on the time from the February 19, 2010 letter, which was the settlement offer that was ignored in this case? And over our objection, the trial court responded, in determining bad faith on the part of an under totality of the circumstances. Now in a vacuum, that is an accurate statement of law. But in context, it was misleading because it told the jury to decide whether direct general acted in bad faith before there was any bad faith failure to settle that was even alleged. Can something be an accurate statement of the law and also be incorrect in context? I mean, couldn't you, Shirley, you had the opportunity to argue to the jury that the totality of the circumstances here didn't include earlier conduct. Why isn't that enough? Well, remember, the context of this was this was a jury question during deliberations after a closing argument had already occurred. And we did argue to that effect. But what the answer to the jury instruction essentially did was contradicted not only our closing argument, but the only substantive jury instruction that was given. And I wasn't in the jury room. We're not ever going to know for sure what would have happened if the court had answered it differently. But the fact that this question was asked shows that it was important. And five minutes after they got the answer to this question, they returned a defense verdict. So that strongly suggests that the answer to this question was dispositive to at least one of the jurors. And it was misleading and it was inaccurate. And as a supplemental jury instruction, it's this court's obligation to review it de novo just like any other jury instruction. The Contreras court said that the gravamen of what constitutes bad faith is whether under all the circumstances an insurer failed to settle a claim against an insured when it had a reasonable opportunity to do so. You can't ignore the when, which is precisely what the trial court did in this instance. And because of that reason, we ask that you reverse the remand for a new trial. Mr. Wyman? May it please the court, James Wyman of Hinshaw and Culberson on behalf of Direct General Insurance. The court in the Pelea's decision that was issued last year, citing the Harvey v. Geico Supreme Court case, said an interesting and I won't say dispositive, but important thing. And that is that the critical inquiry in a bad faith action is not whether an insurer met the obligations set forth in Boston Old Colony, but rather whether the insurer diligently and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment. Now that last, that critical inquiry, whether the insurer diligently and with the same haste and precision as if it were in the insured's shoes, that was the second to last sentence in the fourth paragraph of the requested instruction. Everything else there was pretty much a recitation of the Boston Old Colony obligations. And those obligations are general obligations. They're not specifically tied to the facts of the case at all. Case in point is the Boston Old Colony obligation for an insurer to investigate the facts. Mr. Brink has suggested that that entails investigating whether there is additional insurance coverage. That's not really what investigate the facts means. Investigate the facts, according to Boston Old Colony, which relied on a First District Court of Appeal case, Geico v. Grounds, 311 Southern 2nd, 164, 1975 case. That case clearly stands, says that investigating the facts means investigating liability, investigating the extent of damages. What about, what about the failure to advise piece? Do you think it's impossible to get a bad faith verdict on a theory of failure to advise? Standing alone, that's why bad faith is a jury question. It's not susceptible to saying, okay, here's a checklist of elements. The jury has to look at that and say, and the totality of the circumstances, what was the, you know, various parties' conduct.  But in this situation, perhaps not, because the Ruiz's were difficult to get a hold of. I mean, they did send, you know, letters to both the Ruiz's in August of 2008 saying, we need copies of, you know, if you have any additional insurance coverage, please let us know. And there was no response from that. So, I mean. Didn't the committee that drafted the Florida Standard Jury Instructions say that Instruction 404.4 may not be completely, may not cover everything in every case? Sure. But this is a failure to settle case. There's no question about it. That's what counsel during closing argument argued to the jury. And indeed, the jury, separate jury instruction, the jury here, it's Florida Standard Jury Instruction 404.7. The jury here was instructed that the issue on the case was whether a direct general acted in bad faith and failing to settle Mr. Brink's claims against the Ruiz's. That's the, that's what the jury was told the issue was. It's failing to settle. You throw out all these other things, you know, failure to investigate the facts or, I mean, I can't imagine what would, if the jury were instructed. Let me make sure I understand your argument. So it sounds to me like you're not saying that the standard instruction that was given encompasses the other obligations. You're saying, as a matter of fact, the case was about the failure to settle. Is that right? That's correct. That's what, that's what the jury was instructed. That's what counsel argued during closing argument. This is a failure to settle case. And you know, the jury was, that instruction on failure to settle, which is the standard instruction, encompasses all that. Didn't counsel just assert that the reason they argued it that way was that the failure to advise instruction wasn't given? Well, the instruction that was given. And isn't there some idea before the trial of what the instructions are likely to be? Yes, and the charge conference took place the day before closing argument, obviously. Of course, but that doesn't prevent counsel during closing argument, and this goes to the prejudicial harm aspect of it, doesn't prevent counsel from arguing that this is all tied up within a failure to settle. I mean, it's not, going back to your point of whether a specific instance of not adequately contacting the insurer to obtain additional, you know, any information about additional insurance, that's a factor. You can certainly argue that that would be consonant with that general failure to settle instructions. Indeed, and I think the prejudicial harm aspect here, the third prong, is critical here. And I submit that that's controlled by our Supreme Court's decision in Western Airlines v. Criswell. Criswell concerned, it was an ADA claim, the airline was accused of, was alleged to have a policy of not hiring or firing flight engineers over the age of 60. The FAA had rules saying pilots had to retire at age 60, and Western Airlines extended that to flight engineers. And the airline requested a jury instruction that told the jury that it should defer to the airline's judgment in what constitutes safety for, you know, it put forth a safety argument for declining to hire flight engineers over 60. The Supreme Court said, and I have to quote this, jury instructions may not be judged in artificial isolation, but must be judged in the context of the overall charge and the circumstances of the case. And the court went on to discuss how counsel for the airlines could have presented all this argument about how the jury should defer to the airline's judgment in closing argument, and specifically twice in the opinion it references closing argument. So it's not, you cannot pull out the jury instruction and say, look, that's, you know, it was error not to give this instruction. You have to look at it in the circumstances of the case, the context of the whole charge here. The context of the charge here was also that, and the jury was told, as I mentioned, that the issue in the case was, in a separate instruction, was whether a direct general acted in bad faith and failing to settle. I would also note, and that, an additional Florida standard jury instruction, which was not, I don't believe it was requested, but it certainly wasn't included, is Florida jury's instruction on the summary of the claim, and the jury is told the claim in this case is as follows. Claimant claims that defendant in bad faith in open paren, describe alleged bad faith, closed paren. That would have been much more helpful if, and you could tie it to the facts of the case. It's similar to a negligence charge in that respect, that the jury is told that the defendant is alleged to have acted negligently by engaging in XYZ conduct. So, I'll confess I'm having a little bit of a chicken-egg problem here, because counsel on the other side was saying, well, we didn't focus on this a lot because we didn't have the instructions. We weren't going to give a case to the jury that they weren't going to be instructed on. And you're saying, since this wasn't a focus of the case, why would you give the instruction? Which, doesn't that seem a little bit circular? I'm not really sure where I'm going with that. I don't think so. I mean, because they're told, okay, this is what their instructions are going to be. I mean, that is, the heart of the case is failure to settle. What, you know, Attorney Clem had requested, you know, other insurance information. They could have argued, they didn't do a good enough job, and indeed, their expert testified, went through extensive testimony on why the direct general didn't comply with this obligation to obtain, which is not a Boston Calling obligation. It's just part and parcel of a bad faith claim for failure to settle, to obtain this additional insurance information. That was all before the jury. It could have been, counsel was certainly free to argue during closing argument, as the Supreme Court in the Criswell case suggested, that because these are all, these arguments are all consonant with the overall charge about failure to settle. It all goes into a failure to settle. What goes into it? You didn't, we're asking you to settle this. We need the other insurance information. Direct general didn't do a good job at it. That's what you argue. So, do you think there could ever be a failure to advise instruction in a failure to settle claim, but it just wasn't appropriate here, or do you think that failure to advise is always encompassed in the failure to settle instruction? It's, that's an interesting question, because that's one of the reasons why bad faith is There are no elements of bad faith. You cannot say, okay, failure to advise, check, you know, you're done for. Or summary judgment is granted because you can't show a failure to advise. Absolutely. To answer your question directly, absolutely. But it would depend on the fact pattern. Absolutely what? Well, absolutely. If it were particularly egregious, if, you know, failure, if it were part and parcel of an insurer's conduct, well, they never even talked to the insurer at all. Just blew them off entirely, didn't miss, you know. I mean, I think there would probably have to be something more. Why isn't that, to your point, why isn't that part of the jury's role to decide whether whatever happened was egregious enough to qualify? Well, that's what they're basically told. I mean, you know, that, you know, when it could have, it's given a general charge on what failure to settle is, and told that, you know, the issue here is that whether direct general acted in bad faith in failing to settle. But that, what that is, I mean, you can't, at some point, a line has to be drawn, obviously, particularly in a bad faith case, because as I said, there are, there are no elements to bad faith. Right. But do you think that sometimes a failure to advise instruction must be included? I hate to give the lawyerly answer. It depends. But yes, it does depend. It depends on the facts of the case. So if it depends, then that means yes, because if it depends, then that means sometimes yes, sometimes no. Absolutely. Right. Absolutely. So what's the standard for when that instruction needs to be given? Well, I, you know, it depends. But bad faith, I mean, is such a fact-intensive inquiry here that I don't think it's susceptible to a standard. I mean, it's within the discretion. That's why you have to give the district court discretion, you know. Why isn't the standard if there's evidence to support that charge? Well, if there is, again, if the factual scenario presents itself, I'm at a loss to give a really concrete example, because I'm sure there are egregious circumstances where, as I mentioned before, the insurer just completely fails to communicate, I mean, just in a way that's really harmful and exposes the insurer to an excess judgment. Well, you know, we didn't even call them, didn't write them letters. That would be sufficient evidence to support, perhaps, a specific instruction on that. But again, that's not the fact here. I don't think, I think the fact that in response to Clem's August 4, 2008 letter that on August 18, a direct general sent a letter to the elder Ruiz asking for this information, and then a separate letter with a copy to Clem and a copy to the younger Ruiz, again asking for that information. Is that alone and of itself to find bad faith? So, it may not be enough to find bad faith, but why wouldn't the jury decide if that's enough to find bad faith, rather than the judge as a matter of giving the instruction? I agree 100 percent, because, and the jury, does the jury have to be instructed on the entire facts? Like, well, I mean, does the jury instructions have to go to that level of granular detail? Well, this may be bad, it's up to you, jury, but this could be bad faith, you know. But then wouldn't that mean that the instruction should never be given then? Which instruction is that, Your Honor? The failure to advise instruction. I don't, there was, again, it would depend on the facts of the case. If that were the linchpin of the case, if it were particularly egregious, if, you know, we're talking hypotheticals here, and it's difficult for me to come up with, you know, a factual example where that might be, I'm sure there is one, but that's not this case at all. That's a minor thing. The focus here was on that window from February, that opened on February 18th, which I would also add is going to point number two here on the answer to the jury question. Counsel, trial counsel. Before you get to that, so the last paragraph of the proposed charge, the focus in this bad faith case is not on the actions, is that a correct statement of law? You're just arguing that it's misleading? The last paragraph? Yes. No, I mean, it's all technically correct. I mean, well, except for, as Judge Anderson pointed out, and again, this is where you get into the problems here, where you say, okay, yeah, well, that's technically correct, but it really shifts the jury's, it doesn't allow the jury to take into account the claimant's and the claimant's attorney's conduct. So yeah, these are all— Doesn't it turn on the meaning of the word focus? I beg your pardon? Doesn't it turn on the meaning of the word focus? Well, yes, and I think focus— Focus doesn't mean the only thing. It doesn't mean— It doesn't mean that's all you look at. It means that's the focus. Right. But does a jury know that? I mean, then you have to explain. That's why it's difficult to get into, when you start putting out these obligations, it opens up, you know, rabbit holes, as it were, and it invites more, and confusing to the jury. But I think ultimately, what's dispositive here is that prejudicial harm. There is no prejudicial harm here, because as they were able to argue in closing argument, their expert testified about these obligations. And as opposing counsel said, after getting the answer from the jury, answer the jury question, the jury came back within five minutes. That's correct, what the district court said, because in the Burgess case, the Supreme Court says you look at the entire conduct over the entire course of the claim, of the insurer's entire conduct in handling the claim, not just little windows here. But the answer doesn't say anything about the timing. When you say, look, you look at the totality of the circumstances, the jury asks a specific question about what time period do we look at? So was that responsive? Right. And you, that's, and that's, and what that, and the district court judge gave was consistent with Supreme Court precedent, which says you look at the, at the, in, the bad faith extends to the insurer's entire conduct in handling the claim. So you have to look at the big picture here, the totality of the circumstances. That's what the jury was told to do, and it correctly found, and it found it. With respect to that jury question during deliberations, your opponent suggests that what the judge said, totality of circumstances, was contrary to and in conflict with an earlier instruction. I don't understand what earlier instruction it was in conflict with. Do you know? No, I, I'm not sure what, what that would be. The instruction was, was, was, are we talking about the question or the instruction itself? I'm sorry, we were talking about the actual instruction or the, I didn't understand that. What he says now is that the totality of circumstances answer that the court gave was in conflict with an earlier instruction, and I can't imagine that it was because that's just a flat square law. Yeah, that's, I don't understand it either. Totality of circumstances, you look at, you're telling the jury, you look at the big picture, you look at everything. The insurer's entire conduct handling the claim, that's the totality of the circumstances. You don't look at little, in the Burgess case, the Supreme Court says as much, that you don't look at, you know, the moment that the claim is canceled, issues a time limit of demand until, you know, the suit is brought. You look at the entire conduct of the insurer in handling the claim, and with that, I would ask that the court affirm the judgment. Thank you very much. Mr. Steinberg, you have three minutes remaining for rebuttal. Thank you, Your Honor. First to Judge Grant's questions. Burgess, Odom, Powell, all three cases we cited in our brief, also this court, those are Florida cases, also this court's holding from Geico v. McDonald, those were cases where there was a failure to properly advise the insureds that was considered and was supported a finding of bad faith. Now, this was a failure to settle case, but there were two separate bases of liability. As the summary judgment order makes clear, there's the failure to accept the February 19th settlement offer, and then there's also the failure to properly communicate with the insureds, which serves as the second cause of the failure to settle. And the evidence was that the injured claimant repeatedly asked for a statement from the insured's agent about whether or not there was any additional insurance. Now, counsel said, if I understood him correctly, it was appropriate to give this type of instruction if it was a situation where they didn't talk to the insured or they blew them off entirely. That is precisely what happened here. And I know the evidence was disputed on that, but what you all need to know is just the summary judgment order, the court found that there was a reasonable jury could sustain a finding of bad faith based on the failure to properly advise. That wasn't cross-appealed, so for purposes of this appeal, you have to accept that as a reasonable jury could find that Direct General acted in bad faith based on the failure to properly advise the insureds, as set forth in Boston O'Connell. Now this idea about there not being a checklist, let's think about what my opponent is saying. He's saying that there's no checklist for all the ways in which an insurance carrier can be held in bad faith, so we shouldn't tell the jury about any of the ways in which the insurance carrier can be held in bad faith. The jury was not given any instruction on what the insurance company's good faith obligations are. 404.4 does not cover that. The analogy is, you know, assume there is no checklist for driving a car negligently, right? You can do that in any number of ways. And Direct General's argument is, well, we can't tell the jury that running a red light is illegal, even though there's evidence that the defendant ran the red light in this case because the defendant could be held liable for another reason. That's essentially what they're arguing, and it doesn't make any sense. Now as to prejudicial harm, what we said during closing, their argument is no harm, no foul, because our expert was allowed to give some testimony about what an insurance company's obligations are, and we were allowed to reference that testimony during closing. That is not enough to tell the jury there are these things called the Boston O'Connell duties, and you must find that the insurance company acted in bad faith if they violated one of these duties. We couldn't tell them that. The court instructs the jury on the law, not counsel. Their answer brief, where they are misrepresenting what the law is of the state of Florida, which is what governs this court, is the reason why we need the court to instruct the jury on the applicable law, and then it's up to counsel to make argument about the applicable law applying the facts of the case that the court gives. The final thing I'll say is to answer Judge Anderson's question on the second issue. It was contradictory with 404.4. The question and the answer to the question that you must consider the totality of the circumstances ignored the when in 404.4. The bad faith on the part of an insurance company is failing to settle a claim when under all the circumstances. I understand what you mean. Okay. So, unless the court has any additional questions for me, I'll just respect the request of the court to reverse and remand for a new trial. Thank you very much. I'll now call the case.